## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT ROTH,<br><br>       Plaintiff,<br><br>   v.<br><br>ARQULE, INC., PATRICK J. ZENNER,<br>TIMOTHY C. BARABE, SUSAN L.<br>KELLEY, RONALD M. LINDSAY,<br>MICHAEL D. LOBERG, WILLIAM<br>MESSENGER, RAN NUSSBAUM, PAOLO<br>PUCCI, MERCK SHARP & DOHME CORP.,<br>and ARGON MERGER SUB, INC.,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CASE NO.: 1:20-cv-10007**

**COMPLAINT FOR
VIOLATION OF FEDERAL
SECURITIES LAWS**

Plaintiff Robert Roth ("Plaintiff"), by and through his undersigned attorneys, brings this action against ArQule, Inc. ("ArQule" or the "Company"), Patrick J. Zenner, Timothy C. Barabe, Susan L. Kelley, Ronald M. Lindsay, Michael D. Loberg, William Messenger, Ran Nussbaum, and Paolo Pucci, the members of ArQule's board of directors (collectively referred to as the "Board" or the "Individual Defendants"), Merck Sharp & Dohme Corp. ("Parent"), and Argon Merger Sub, Inc. ("Merger Sub," and together with Parent, "Merck," and together with ArQule, the Board, and Merck, "Defendants") for violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. 240.14d-9, in connection with a tender offer by Merck to acquire all outstanding shares of ArQule common stock (the "Tender Offer"). Plaintiff alleges the following based upon personal knowledge as to himself, and upon information and belief, including the investigation of his counsel, as to all other matters.

**NATURE OF THE ACTION**

1.      On December 9, 2019, ArQule and Merck announced that they had entered into an Agreement and Plan of Merger ("Merger Agreement"), pursuant to which Merger Sub would initiate a tender offer to acquire all outstanding stock of ArQule.

2.      To effect the Proposed Transaction, Merger Sub commenced the Tender Offer on December 17, 2019 to purchase each share of ArQule common stock for $20.00 in cash (the "Merger Consideration"). The Tender Offer is set to expire at midnight Eastern Time, on January 15, 2020 (the "Expiration Date").

3.      In connection with the commencement of the Exchange Offer on December 17, 2019, the Company filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the United States Securities and Exchange Commission (the "SEC"). The Recommendation Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the financial projections prepared by ArQule management and relied upon by the Board and the Board's financial advisor, Centerview Partners LLC ("Centerview"), the financial analysis conducted by Centerview in preparing its fairness opinion, and the potential conflicts of interest faced by Centerview and ArQule insiders in the Proposed Transaction. Without all material information, ArQule stockholders are materially misled regarding their decisions to exchange their shares.  The failure to adequately disclose such material information constitutes violations of §§ 14(e) and 20(a) of the Exchange Act

4.      For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the close of the Tender Offer or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws.  Judicial intervention is warranted here to rectify

existing and future irreparable harm to Plaintiff and other ArQule stockholders.

## PARTIES

5.      Plaintiff is, and at all relevant times has been, a stockholder of ArQule.

6.      Defendant ArQule is a company organized under the laws of the state of Delaware. ArQule maintains its principal executive offices at One Wall Street, Burlington, Massachusetts 01803. ArQule's common stock is listed for trading on the Nasdaq Stock Exchange under the ticker symbol "ARQL."

7.      Defendant Patrick J. Zenner has served as Chairman of the Board since 2004 and has served as a director of the Company since 2002.

8.      Defendant Timothy C. Barabe has served as a director of the Company since November 2001.

9.      Defendant Susan L. Kelley has served as a director of the Company since 2011.

10.     Defendant Ronald M. Lindsay has served as a director of the Company since June 2005.

11.     Defendant Michael D. Loberg has served as a director of the Company since January 2007.

12.     Defendant William G. Messenger has served as a director of the Company since January 2005.

13.     Defendant Ran Nussbaum has served as a director of the Company since November 2017.

14.     Defendant Paolo Pucci has served as a director of the Company and its Chief Executive Officer since June 2008.

15.     Defendant Parent is the wholly-owned subsidiary of Merck & Co., Inc., a leading

global biopharmaceutical company, and is headquartered in Whitehouse Station, New Jersey.

16.     Defendant Merger Sub is a Delaware corporation and wholly-owned subsidiary of

Parent, formed for the purpose of effecting the Proposed Transaction.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(e) and 20(a) of the Exchange Act.

18.     Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under

traditional notions of fair play and substantial justice.

19.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C.

§ 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an

effect in this District; (ii) ArQule maintains its principal place of business in this District and each

of the Individual Defendants, and Company officers or directors, either resides in this District or

has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs

complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to

Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District;

and (v) Defendants have received substantial compensation in this District by doing business here

and engaging in numerous activities that had an effect in this District.

## SUBSTANTIVE ALLEGATIONS

**Company Background and the Proposed Transaction**

20.     Founded in 1993, ArQule is a biopharmaceutical company that engages in research

and development for targeted therapeutics to treat cancers and rare diseases. The Company has internally developed four separate drugs that are in guided clinical trials. ArQule also has a proprietary kinase library from which to develop additional drug candidates.

21. On December 9, 2019, ArQule and Merck announced the Proposed Transaction through a press release, which states in relevant part:

> KENILWORTH, N.J. & BURLINGTON, Mass.--(BUSINESS WIRE)--Merck (NYSE: MRK), known as MSD outside the United States and Canada, and ArQule, Inc. (Nasdaq: ARQL) today announced that the companies have entered into a definitive agreement under which Merck, through a subsidiary, will acquire ArQule for $20 per share in cash for an approximate total equity value of $2.7 billion. ArQule is a publicly traded biopharmaceutical company focused on kinase inhibitor discovery and development for the treatment of patients with cancer and other diseases. ArQule's lead investigational candidate, ARQ 531, is a novel, oral Bruton's tyrosine kinase (BTK) inhibitor currently in a Phase 2 dose expansion study for the treatment of B-cell malignancies.

> "ArQule's focus on precision medicine has yielded multiple clinical-stage oral kinase inhibitors that have novel and important properties," said Dr. Roger M. Perlmutter, president, Merck Research Laboratories. "This acquisition strengthens Merck's pipeline with the addition of these strategic assets including, most notably, ARQ 531, a compelling candidate for the treatment of B-cell malignancies."

> BTK inhibition has been shown to prevent B-cell receptor signaling that is critical for the survival and proliferation of leukemic cells in many B-cell malignancies. ARQ 531 is a highly selective, reversible inhibitor that blocks both wild-type BTK and the C481S mutant form of the enzyme that is commonly associated with resistance to other BTK inhibitors. In early clinical trials, ARQ 531 demonstrated a manageable safety profile and early signs of anti-tumor activity for the treatment of patients with relapsed or refractory chronic lymphocytic leukemia (CLL) and Richter's Transformation. Final data from the Phase 1 study of ARQ 531 will be presented on Dec. 9, 2019 at the 61st American Society of Hematology (ASH) Annual Meeting & Exposition in Orlando, Florida.

> "We are proud that Merck has recognized the contributions that ArQule, together with its scientific collaborators, has made to the field of precision medicine in oncology with ARQ 531 for the treatment of B-cell malignancies and with the rest of our clinical-stage pipeline," said Paolo Pucci, CEO, ArQule. "With this agreement, ArQule's pipeline will benefit from Merck's vast capabilities and determined engagement to benefit the patients who we have always strived to serve."

> Under the terms of the acquisition agreement announced today, Merck, through a subsidiary, will initiate a tender offer to acquire all outstanding shares of ArQule. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number

of ArQule's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions. Upon the successful completion of the tender offer, Merck's acquisition subsidiary will be merged into ArQule, and any remaining shares of common stock of ArQule will be canceled and converted into the right to receive the same $20 per share price payable in the tender offer. The transaction is expected to close early in the first quarter of 2020.

BofA Securities acted as financial advisor to Merck in this transaction and Covington & Burling LLP as its legal advisor. Centerview Partners acted as exclusive financial advisor to ArQule and Skadden, Arps, Slate, Meagher & Flom LLP as its legal advisor.

**The Recommendation Statement Is Materially Incomplete and Misleading**

22.     On December 17, 2019, in order to convince ArQule stockholders to tender their shares in the Tender Offer, Defendants authorized the filing of a materially incomplete and misleading Recommendation Statement containing the recommendation of the Board.  Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Recommendation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares in favor of the Proposed Transaction, in violation of Sections 14(e) and 20(a) of the Exchange Act.

**ArQule Management's Financial Projections for the Company**

23.     The summary of the financial analyses conducted by the Company's financial advisor, Centerview, states that "[t]he Management Projections were relied upon by Centerview as the basis for the rendering of its fairness opinion . . . . (and were the only financial projections with respect to ArQule used by Centerview in rendering such opinion)."

24.     Thus, the cash flow projections that formed the basis for these analyses were management's best estimates of the Company's future results, and did not originate from some other source.

25.     The Recommendation Statement discloses the Company's risk-weighted projections for the Company, based on internal assumptions regarding the development, approval, and marketing of the drug candidates under development.

26.     However, the Recommendation Statement omits management's internal assumptions about the probability of technical success and regulatory approvals, launch timing, epidemiology, pricing, sales ramp, market growth, market share, competition, market exclusivity, research and development expenses, general and administrative expenses, effective tax rate and utilization of net operating losses and other relevant factors related to ArQule's long-range operating plan.

27.     Additionally, the Recommendation Statement fails to disclose the un-risked projections so ArQule stockholders can evaluate the financial impact that management's risk adjustments had on the projections. omits the projected line items used to calculate Adjusted EBITDA, the base financial metric representing the Company's future earnings.

28.     The above-referenced omitted information relating to the Company's financial projections significantly altered the total mix of information available to ArQule's stockholders regarding the future value of the Company.

29.     Thus, the omission of this projected financial information serves to prevent Company stockholders from evaluating the fairness analysis conducted by Centerview, or to perform their own valuation of the Company

***Centerview's Valuation Analyses and Fairness Opinion***

30.     The Recommendation Statement describes Centerview's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying

these analyses.  Without this information, as described below, ArQule stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to ArQule stockholders.

31.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 11.0% to 13.0%; (ii) the basis for assuming unlevered free cash flows would decline in perpetuity after December 31, 2037 at a rate of free cash flow decline of 80.0% year-over-year; and (iii) the tax savings from usage of future federal net operating losses utilized by Centerview in the analysis.

### The Potential Conflicts of Interest Faced by Company Insiders and Centerview

32.     The Recommendation Statement fails to disclose any negotiations or communications regarding the future employment of the members of ArQule's management, as well as the details of any employment related discussions and negotiations that occurred between Merck and ArQule executive officers, including who participated in all such communications, when they occurred, and their content. The Recommendation Statement further fails to disclose whether any of Merck's prior proposals or indications of interest addressed the prospect of management retention.

33.     Despite this omission of any information regarding such communications, the Recommendation Statement discloses that:

> It is possible that Continuing Employees, including the executive officers, will enter into new compensation arrangements with Parent or its affiliates. Such arrangements may include agreements regarding future terms of employment, the right to receive equity or equity-based awards of Parent or retention awards. As of

the date of this Schedule 14D-9, no compensation arrangements between such persons and Parent and/or its affiliates have been established. Any such arrangements with ArQule's executive officers are currently expected to be entered into after the completion of the Offer and will not become effective until after the Merger is consummated, if at all.

34.     While no arrangements have been established, the Recommendation Statement is silent as to the initiation or existence of such discussions. Naturally, the ArQule leadership team would prefer, and therefore prioritize, a transaction with a buyer who would continue to employ them over any transaction in which they would no longer enjoy a salary.

35.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36.     Centerview also has potential conflicts of interest that need to be fully disclosed. The Recommendation Statement discloses that Merck has engaged Centerview in the past two years and that Centerview has received between $15 million and $20 million in aggregate compensation from Merck over that period.

37.     But the Recommendation Statement omits the financial advisory services provided to Merck, as well as the actual compensation paid, and any compensation that Centerview expects to receive from Merck in the future.

38.     Because of this omission, ArQule stockholders are misled regarding Centerview's actual interests in the Proposed Transaction, and therefore the objectiveness of its fairness opinion and financial analyses.

39.     Defendants' failure to provide ArQule stockholders with the foregoing material information renders the statements in the *Background of the Merger* section of the

Recommendation Statement false and/or materially misleading.

40.     In sum, the omission of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully informed decision regarding whether to tender his shares in favor of the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I
Claim for Violation of Section 14(e) of the Exchange Act and Rule 14d-9
(Against the Individual Defendants and ArQule)

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

43.     As discussed above, ArQule filed and delivered the Recommendation Statement to its stockholders, which defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

44.     Defendants violated § 14(e) of the Exchange Act and Rule 14d-9 by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the exchange offer commenced in conjunction with the Proposed Transaction. Defendants knew or recklessly disregarded that the

Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45.     The Recommendation Statement was prepared, reviewed and/or disseminated by defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the exchange offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

46.     In so doing, defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

47.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to exchange their shares. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

48.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

49.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed

decision if such misrepresentations and omissions are not corrected prior to the expiration of the exchange offer.

## COUNT II
Claim for Violation of Section 20(a) of the Exchange Act
(Against the Individual Defendants)

50.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Aerohive within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Aerohive and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Recommendation Statement.

54.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring that the Recommendation Statement is materially false or misleading;

(B)     enjoining, preliminarily and permanently, the Proposed Transaction;

(C)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D)     directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)     granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated:  January 3, 2020                    **LEVI & KORSINSKY, LLP**

                                           By:  /s/ Shannon L. Hopkins
                                           Shannon L. Hopkins (BBO #657485)

Sebastiano Tornatore (BBO #686175)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email:  shopkins@zlk.com
            stornatore@zlk.com

- and -

Donald J. Enright (to be admitted pro hac vice)
Elizabeth K. Tripodi (to be admitted pro hac vice)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email:  denright@zlk.com
            etripodi@zlk.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on January 3, 2020.

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins